UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 17-6-DLB-EBA

UNITED STATES OF AMERICA,                                                                             PLAINTIFF

v.                      **MEMORANDUM OPINION AND ORDER**

JASON HELTON,                                                                               DEFENDANT

\*\*\*    \*\*\*    \*\*\*    \*\*\*

**I.     Introduction**

This matter is before the Court upon Defendant Jason Helton's Motion to Set Aside Verdict of Guilty [Docket No. 60]. The United States having responded to the motion [Docket No. 62], no reply having been filed, and the time for filing a reply having long expired, the motion is ripe for review. For the reasons set forth herein, the Court finds there is no valid ground upon which to set aside the verdict of guilty and will, therefore, **deny** the motion.

**II.     Factual and Procedural History**

On February 23, 2017, a grand jury returned a two-count indictment, charging Jason Helton with violations of 18 U.S.C. § 1001 and 641. Specifically, it was alleged that beginning in July of 2014 and continuing until April of 2016, Helton knowingly and willfully made and used a false writing and document to the Internal Revenue Service, by falsely reported that he performed work that he did not actually perform and incurred work-related expenses that he did not actually incur. It was further alleged that during the time stated

1

in the indictment, Helton willfully and knowingly received, concealed, retained and intended to convert stolen property of the United States, in an amount exceeding $1,000.

The jury trial began on August 14, 2017. After almost four full days of testimony, on August 17, 2017, the jury was instructed and began deliberations shortly after noon. At 4:25 p.m., the Court was advised by a Court Security Officer that the jury had reached its verdict. [Transcript of Jury Verdict, Docket No. 57, p. 2, l. 2-5]. The jury entered the courtroom at 4:49 p.m., and the undersigned published the verdict of guilty on both counts. *Id.*, p. 3, l. 3-12.

The Court then inquired if either party desired a poll of the jury. *Id.* Defense counsel requested a poll of the jury. The Clerk proceeded to poll the twelve jurors, while they remained seated in the jury box. After polling Jurors 341, 255, 268, 337, 279 and 285, the Clerk polled Juror 306 and the following transpired:

DEPUTY CLERK: Juror Number 306, is that your verdict?

THE COURT: 306?

JUROR NO. 306: **Yeah, kind of.**

*Id.*, p. 4, l. 10-13 (emphasis added).

The undersigned, admittedly taken by surprise, inquired:

THE COURT: Sir? Did you vote unanimously with both of these counts?

JUROR NO. 306: **Yeah, I guess** (emphasis added).

THE COURT: Well, yeah, you did?

JUROR NO. 306: Well, I was kind of bullied into it, tell you the truth. I just kind of feel like I was bullied into it. I wasn't sure. Some of the evidence wasn't really - -

*Id.*, l. 14-21.

2

The Court immediately advised Juror 306 to say no more. *Id.*, l. 22-23. The Clerk continued to poll the remaining jurors, with no additional anomalies; eleven of the 12 jurors unequivocally confirmed that the verdict was, in fact, theirs. The undersigned then sent the jurors back to the jury room with instructions to refrain from deliberating further. *Id.*, l. 16-23.

The undersigned, counsel, the Clerk, the undersigned's law clerk and the court reporter then retreated to Chambers, where Defendant's counsel, Mr. Joy, made an oral motion for a mistrial. *Id.*, p. 6, l. 9. After hearing arguments from Mr. Joy, as well as counsel for the United States, Mr. Rosenberg, the undersigned excused the lawyers and requested the United States Marshal to bring Juror 306 to chambers so a brief inquiry could be made into the possible ambiguity the polling revealed.

The undersigned spoke with Juror 306 in chambers, in the presence of the U.S. Marshal, the court reporter and the law clerk. The conversation was fully transcribed and the transcript was sealed and entered into the record at Docket No. 58.

The conversation was brief, seven minutes. Juror 306 confirmed that he had, in fact, deliberated. When asked if he felt bullied, as he had indicated during the poll, he replied "I kind of was a little bit." Docket No. 58, p. 2, l. 4-7. Juror 306 was not clear as to what the "kind of" "little bit" intimidation was and then suggested "it was more of a joke, kind of" that he "took the wrong way." *Id.*, p. 7, 1. 7-9. When asked by the undersigned if further deliberations would assist him in reaching a unanimous verdict, Juror 306 made a reference to the movie, "12 Angry Men" and then "guessed" that his vote was "guilty." *Id.*, p. 6 and 7. He concluded "now that I've had a minute to think about it, I'm solid on mine. He is guilty." *Id.*, p. 7, l. 15-17. The undersigned then asked, "[y]our vote is guilty?' Juror

3

306 responded "[y]es." *Id.*, l. 20-21.

The conversation concluded with the following colloquy:

THE COURT: All right. We're going to go back in, and I'm going to ask for a poll of the jury, and you can give an answer just like you gave me. I'm not telling you to do that. That's entirely your call. I'm just repeating what you just said. I mean --

JUROR NO. 306: Yeah, I will not choke next time.

THE COURT: Listen, it's not "choke or not choke." It's your call. I'm just making sure that it's your call. I'm not trying to single you out. I just --

JUROR NO. 306: Well, I was the one that kind of screwed things up.

THE COURT: You didn't screw anything up. You told me what you said. So here's what I'm going to do. We're going to go back in, take a poll of the jury, we'll go from there.

JUROR NO. 306: Okay.

THE COURT: Thank you. You can go back in the jury room. Don't apologize. Don't apologize.

JUROR NO. 306: I just choked when we got in there, and I --

THE COURT: No worries. Thank you.

*Id.*, p. 7, l. 22-25, p. 8, l. 1-17.

The jurors thereafter returned to the courtroom and, in the presence of counsel, were polled a second time, during which all jurors, including Juror 306, affirmed their verdict of guilty. The jury was then finally discharged.

### III. Discussion

Defendant seeks to set aside the jury's verdict of guilty, arguing that the Court violated Federal Rule of Criminal Procedure 31(d) by taking the steps it did to address the anomaly which occurred during the jury poll.

Rule 31(d), entitled "Jury Poll" provides:

> After a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.

Fed.R.Crim.Proc. 31(d). "The object of a poll is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict to which the foreman has returned and thus to enable the court and the parties 'to ascertain for a certainty that each of the jurors approves of the verdict as returned.'" *United States v. Love*, 597 F.2d 81, 84 (6th Cir. 1979).

Defendant contends that when the poll of the jury reveals a lack of unanimity, Rule 31(d) presents two, and only, two options: direct the jury to deliberate further or declare a mistrial. He urges that, the Court having done neither, a mistrial was warranted. In the Court's view, Defendant's interpretation of Rule 31(d) is unduly narrow. The Rule does not, as Defendant suggests, prohibit the Court from posing questions to a juror. Rather, 'where a juror's response to a poll is ambiguous, it is **incumbent upon** the court, and consistent with Rule 31(d), to determine if, in fact, there was not unanimous concurrence." *United States v. Miller*, 902 F.2d 1570, 1990 WL 67400 at *5 (6th Cir., May 22, 1990) (emphasis added).

In this case, in response to the poll, Juror 306 replied, "yeah kind of." Juror 306's uncertain "yeah kind of " triggered the Court's duty to inquire. The response was cryptic. Did he mean "yes" or "no"? *Compare United Stares v. Love*, 589 F.2d 81 (6th Cir. 1979) (during polling, in response to "what was your verdict," a juror responded "no sir," prompting the Court to declare a mistrial). Juror 306's ambiguous "yeah kind of" absolutely triggered the Court's duty to inquire.

Here, in an attempt to dispel the ambiguity of Juror 306's response during the initial poll of the jury, the undersigned posed questions to Juror 306, outside of the courtroom, on the record. The inquiry was brief, well-intentioned and, contrary to what Defendant implies, not coercive. Defendant cries foul, intimating that the Court's questioning of Juror 306 was more akin to an interrogation, thereby nullifying a verdict against him. Yet, the transcript speaks for itself. It is clear from his own statements that Juror 306 was not bullied by his fellow jurors or by the judge. He concluded that his verdict was that of guilty. Whatever gave him pause, he appeared to resolve.

In retrospect, while the better course may have been to include counsel in the inquiry, allow further deliberations[1], or better yet, sleep on it, as they say, before entering unchartered territory, how the Court handled an uncommon situation does not mandate a mistrial. In the absence of established protocol, the undersigned endeavored to determine what Juror 306 meant by "yeah kind of." Following brief conversation with Juror 306, the Court was confident the verdict was unanimous and proceeded to re-poll and discharge the jury.

Contrary to Defendant's argument, the Court was not prohibited from questioning Juror 306; rather, the court is specifically tasked with determining the unanimity of a verdict. Despite the best efforts of defense counsel, the Court is not persuaded that its actions require setting aside the verdict. Accordingly,

**IT IS ORDERED** that Defendant Jason Helton's Motion to Set Aside Verdict of Guilty [Docket No. 60] be, and is hereby **denied**.

---

[1] The record reflects that defense counsel objected to any in-chambers discussion with Juror 306, as well as allowing further deliberations by the jury.

6

**IT IS FURTHER ORDERED** that the **Sentencing** is hereby continued to **Monday, January 8, 2018 at 10:30 a.m. in Ashland**.

This 29th day of October, 2017.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Ashland Criminal\2017\17-6 Order denying DE 60.wpd